# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 1:16-cv-0081-LJO-SKO |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND VACATING MARCH 5, 2018 HEARING (ECF NO. 23 & 24) |
| v. | |
| MARK MERRILL REYNOLDS, | |
| Defendants. | |

The Court has received and reviewed Defendant's motion to dismiss certain charges in the Indictment, ECF No. 23 & 24, the Government's opposition, ECF No. 25, and Defendant's reply. ECF No. 26. Because the arguments are articulated with sufficient clarity in the briefs, the Court VACATES the March 5, 2018 hearing and decides the matter on the papers.

**1.  Standard of Decision**

Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions that must be made before trial. Among them is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d

1

911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."). In determining whether a cognizable offense has been charged, the court asks only whether, accepting the facts as alleged in the indictment as true, a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914 (citation omitted).

**2.      Motion to Dismiss Count One For Failure to State an Offense Re: Health Care Plan Asset Embezzlement**

Defendant moves to dismiss Count One on the ground that the business arrangement alleged in the Indictment cannot state an offense of embezzlement of health care plan assets in violation of 18 U.S.C. § 669 ("Section 669"). Section 669 provides as follows:

> Whoever knowingly and willfully embezzles, steals, or otherwise without authority converts to the use of any person other than the rightful owner, or intentionally misapplies any of the moneys, funds, securities, premiums, credits, property, or other assets of a health care benefit program, shall be fined under this title or imprisoned not more than 10 years, or both; but if the value of such property does not exceed the sum of $100 the defendant shall be fined under this title or imprisoned not more than one year, or both.

The term "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b).

The Indictment alleges that various businesses ("Clients" of Defendant's business "Ben-E-Lect") purchased for their employees high deductible group health insurance plans from independent insurance carriers and then self-insured their employee beneficiaries for amounts up to the high deductible. ECF No. 1 at ¶ 4. Pursuant to Administrative Service Agreements between the Clients and Ben-E-Lect, Clients would deposit funds into an account managed by Ben-E-Lect to be used for the purpose of

covering claims paid to beneficiaries out of the self insurance. *Id*. at ¶ 5. Specifically, Ben-E-Lect was hired to process health care claims paid out of the self-insured deductible coverage accounts. *Id*. at ¶ 4.

It is Defendant's position that Client funds were never deposited into an account opened or controlled by a health benefit plan, and that no health benefit plan supervised or controlled any such funds. Defendant cites *United States v. Garcia-Pastrana*, 584 F.3d 351 (1st Cir. 2009), for the proposition that the Government must establish that Ben-E-Lect had "sufficient supervision and control" over the funds in question so as to establish that those funds were "assets of a health benefit program." *Id.* at 371. Defendant maintains that because Ben-E-Lect acted only as "agent and fiduciary" of the Clients, the Clients maintained the right to exercise control over their funds. This is a question of fact to be resolved at trial. It is alleged that Ben-E-Lect acted "in a fiduciary capacity." ECF No. 3. *Garcia-Pastrana*, relied upon by Defendant, itself uses a fiduciary as an example of an entity that <u>did</u> maintain sufficient control over funds to trigger coverage under Section 669. *Garcia-Pastrana*, 584 F.3d at 372.

Defendant also points out that under California insurance law, self-insurance is "no insurance" because it does not involve shifting risk. *See* ECF No. 24 at 3 (citing Cal. Ins. Code § 22, 23; *Chambi v. Regents of the University of Cal*., 95 Cal. App. 4th 822, 826 (2002)). This is a red herring. The statutory definition of "health care benefit program" says nothing about "insurance" and does not require risk shifting. Moreover, the participation of a traditional health insurance entity is not required. Other cases have found Section 669 applicable to medical benefits paid out under a no-fault automobile insurance contract because medical providers received payments under those policies. *See United States v. Lucien*, 347 F.3d 45, 52 (2d Cir. 2003). The scheme alleged here involved a contract under which medical claims would be paid. That is all that is required.

The motion to dismiss Count One on the ground that an offense under Section 669 is not stated is DENIED.

**3.      Motion to Limit Count One to Allegations that Post-Date June 2, 2011**

Defendant next argues that Count One should be dismissed in part and limited in its scope to

3

allegations of embezzlement that post-date June 2, 2011. The crime of embezzlement is subject to a five-year statute of limitations. *See* 18 U.S.C. § 3283. An exception exists for continuing offenses, *Toussie v. United States*, 397 U.S. 112 (1970), but no court has addressed whether Section 669 theft or embezzlement in connection with healthcare is a continuing offense. There is some caselaw addressing this question in the context of the similarly worded embezzlement of public funds statute, 18 U.S.C. § 641 ("Section 641").[1] A District of Montana decision, *United States v. Crary*, No. CR 13–35–M–DLC, 2013 WL 6054607 (D. Mt. Nov. 15, 2013), explains with clarity that there is no clear rule in the Ninth Circuit as to whether such statutes permit continuing offense charges. *Crary* adopted the reasoning of *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999), wherein the Seventh Circuit examined whether embezzlement by federal assistance recipients under 18 U.S.C. § 666[2] ("Section 666") was a continuing offense by applying a test from *Toussie*, 397 U.S. at 115, which calls for an inquiry into whether: "(a) the explicit language of the substantive criminal statute compels such a conclusion, or (b) the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Yashar* concluded, based upon the parties' mutual concession, that Section 666 was not a continuing offense under this test. 166 F.3d at 876. *Crary* applied this approach to Section 641 to find that offense was not a continuing one either:

> Regarding the first part of the *Toussie* test . . . nothing in the language of § 641 indicates that Congress intended it to be a continuing offense. As to the second part [of the *Toussie* test], the statement in *United States v.*

---

[1] 18 U.S.C. § 641, in relevant part, applies to:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof;

[2] 18 U.S.C. § 666, in relevant part, applies to certain federal assistance recipients who:

> embezzle[], steal[], obtain[] by fraud, or otherwise without authority knowingly convert[] to the use of any person other than the rightful owner or intentionally misapplies, property that—[¶] (i) is valued at $5,000 or more, and [¶] (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency. . . .

4

> *Pease*, 2008 WL 808683 (D. Ariz. March 24, 2008), that "[i]t is not the active or passive nature of a defendant's actions that matters, but rather whether the statute describes an offense that by its nature continues after the elements have been met" compels the conclusion that § 641 is not a continuing offense. The language of the statute is very broad and encompasses many types of conversion, theft, or embezzlement of various types of government property; "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, ... or whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted...." [¶] Although some crimes falling within this statute may continue after the elements have been met, many others would be complete upon one criminal action such as stealing property or embezzling funds on one occasion. Thus, the Court cannot say that the nature of the crime as defined by the statute is such that Congress must assuredly have intended that it be treated as a continuing one.

*Crary*, 2013 WL 6054607, at *3-4. *Crary* specifically rejected an alternative analytical approach that would have looked to the specific nature of the charged offense to determine whether that conduct alleged an uninterrupted scheme. *Id*. at *4. The Court agrees that this alternative approach is inappropriate under the present circumstances. *Id*.[3]

Here, as with Section 641, the relevant statutory language of Section 669, does not indicate Congressional intent to create a continuing offense. Likewise, as with Section 641, although some crimes falling within the purview of Section 669 may continue after the elements have been met, many others would be complete upon one criminal act. Therefore, it cannot be found that the nature of the crime as defined by the statute is such that Congress must assuredly have intended that it be treated as a continuing one.

The Government's suggestion that the presence of allegations outside the statute of limitations can be handled by a jury instruction requiring unanimity as to at least one affirmative act within the permissible time period is unconvincing. In support of this argument, they rely on *United States v.*

---

[3] The Court also agrees with *Crary*'s finding, that *United States v. Morales*, 11 F.3d 915, 921 (9th Cir. 1993), which, in evaluating a sentencing issue in connection with a bribery conviction, addressed the continuing offense doctrine in a non-statute of limitations context, does not control here. *Crary*, 2013 WL 6054607, at *2-4

*Shorter*, 809 F.2d at 54, 56 (D.C. Cir. 1987), *abrogated on other grounds as set forth in Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), which is distinguishable because its holding turned on duplicity,[4] not the statute of limitations. Likewise, the Government's reliance on *United States v. Aracri*, 968 F.2d 1512, 1517-18 (2d Cir. 1992), is unhelpful because that case concerned a conspiracy charge, which is subject to a totally different continuing offense analysis.

The motion to dismiss allegations in the Indictment that pre-date June 2, 2011 is GRANTED. Whether evidence of transactions prior to that date is admissible at trial is a separate question.

**4.      Motion to Dismiss Mail Fraud Counts**

Defendant next argues that the mail fraud counts should be dismissed because they are based upon mailings that are not, in and of themselves, alleged to be false or fraudulent in any way. But, this is not required. "A mailing need not itself be false to be in furtherance of a scheme to defraud, nor need it be essential to the scheme." *United States v. Benny*, 786 F.2d 1410, 1420 (9th Cir. 1986) (internal citations and quotations omitted). "Rather, the mailing must be closely entwined with or closely related to the scheme." *Id*. The indictment alleges the "replenishment" letters in question were sent to obtain the funds that were then embezzled. ECF No. 1 at ¶ 5. This is sufficient for the purposes of an indictment. The motion to dismiss the mail fraud counts is DENIED.

**5.      Motion to Dismiss Money Laundering Charges**

Defendant next moves to dismiss the money laundering charges on two grounds. Defendant first argues that the money laundering charges rely on improperly alleged mail fraud allegations as predicate "specified unlawful activity." *See* 18 U.S.C. § 1956(a)(1)(B)(i)(requiring knowledge that "the transaction is designed in whole or in part – to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity"). Because the mail fraud allegations are alleged properly, this argument is without merit.

---

[4] The Government also addresses whether Count One is duplicitous. ECF No. 25 at 7-8. However, because Defendant does not appear to be pursuing this argument, see ECF No. 26 at 4-5, the Court declines to evaluate this issue.

6

Defendant next argues that four of the five money laundering counts should be dismissed because they are based upon transactions that also constitute the alleged embezzlement, namely transfers from the employer client accounts to other accounts. Defendant cites *United States v. Wilkes*, 662 F.3d 524, 545-46 (9th Cir. 2011), for the proposition that "transactions that created the criminally-derived proceeds must be distinct from the money-laundering transaction." The law is more nuanced than Defendant acknowledges. *Wilkes* relies on a Tenth Circuit case, *United States v. Pretty*, 98 F.3d 1213 (10th Cir. 1996), which stands for the proposition that a transaction may simultaneously generate the proceeds of a crime and attempt to disguise the source of the money. *Wilkes* summarized *Pretty* as follows:

> In *Pretty*, a jury convicted defendants Pretty and Whitehead of 32 counts of "(1) engaging in a bribery or kickback scheme, in violation of 18 U.S.C. § 666; (2) conspiring to engage in this scheme, in violation of 18 U.S.C. § 371; and (3) money laundering, in violation of 18 U.S.C. §§1956, 1957." Pretty, 98 F.3d at 1216-17. The government uncovered numerous financial transactions among Patricia Whitehead, Deputy State Treasurer for the State of Oklahoma, Pretty, and another—Patrick Kuhse—demonstrating that Whitehead was receiving kickbacks from Kuhse, often through Pretty as a middleman, in return for sending business his way. *Id*. at 1216. On appeal, Whitehead argued that those "transactions cannot be the basis of §1956(a)(1)(B)(i) [concealment money laundering] liability because they were part and parcel of the kickback scheme." *Id*. at 1220. *See e.g*., *Majors*, 196 F.3d at 1212 ("A violation of the concealment provision must 'follow in time' the completion of the underlying transaction as an activity designed to conceal or disguise the origins of the proceeds.").
>
> The charges under §1956(a)(1)(B)(i) were based on a trust set up by Pretty and funded by Kuhse, who pled guilty to money laundering in a separate proceeding. *Pretty*, 98 F.3d at 1220; [citation]. Pretty approved a loan to Whitehead and her husband from the trust to finance the Whiteheads' new house. *Pretty*, 98 F.3d at 1220. The defendants claimed that the transactions were negotiated at arms' length. *Id*. The Tenth Circuit concluded that the jury's inference that the intent of the transactions at issue was at least in part to conceal the source of the funds was a reasonable one. Id. The court explained that "[a] direct payment from Kuhse to Whitehead would have violated §666 without constituting money laundering. **The effort to disguise the source of the money was an additional act that is separately punishable under §1956(a)(1)(B)(i), notwithstanding the <u>simultaneity</u> of the two crimes.**" *Id*. at 1220-21.

*United States v. Wilkes*, 662 F.3d 524, 546 (9th Cir. 2011) (emphasis added). The Indictment alleges with sufficiency that the transactions in question were made with a simultaneous intent to conceal their nature. ECF No. 1 at ¶ 8. The motion to dismiss the money laundering charges is DENIED.

## **CONCLUSION AND ORDER**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated: **February 23, 2018**   /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE